STEVENS *v.* STEVENS.

1. APPEAL AND ERROR — CONSOLIDATION OF CAUSES — PRACTICE — EQUITY—FORECLOSURE OF MORTGAGES.

Although counsel for all parties consent, it is not permissible to consolidate, on appeal, a foreclosure suit in equity with an action at law in attachment, involving practically the same facts and evidence, but different questions of law, where the parties insist upon their equitable, legal, and technical rights in both proceedings, and numerous assignments of error are urged, the questions involved in the chancery cause being distinct from those raised in the action at law.

2. WITNESSES — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—INCOMPETENCY—EVIDENCE—GUARDIAN AND WARD.

The court is not at liberty to interpret the statute declaring incompetent the testimony of a party or agent as to matters equally within the knowledge of decedent (3 Comp. Laws, § 10212, 5 How. Stat. [2d Ed.] § 12856), so as to exclude testimony of an opposite party as to matters known to an incompetent under guardianship.

3. SAME—HUSBAND AND WIFE—PRIVILEGED COMMUNICATIONS.

Testimony of the wife, relating to her claim against her husband for money that she had loaned to him before he became incompetent mentally, was admissible, in an action for the recovery thereof, and was not excluded by the provisions of 3 Comp. Laws, § 10213 (5 How. Stat. [2d Ed.] § 12857), which excepts testimony in relation to separate interests or property of either when the other is a party to the record.

4. SAME—EVIDENCE.

In an action to recover money loaned by the wife to her husband, it was erroneous to permit the plaintiff to testify to details of the domestic relations of the parties, and of other financial transactions with members of his family, who borrowed money from her, and it was prejudicial to receive testimony of another witness tending to show. defendant's purpose to obtain the money of plaintiff, in marrying her.

181 Mich.—29.

Error to Cass; Des Voignes, J.   Submitted April 15, 1914.   (Docket No. 35.)   Decided July 24, 1914.

Attachment by Agnes Stevens against Daniel W. Stevens for money had and received.   Judgment for plaintiff.   Defendant brings error.   Reversed.

*Stewart & Sabin* and *Stewart & Jacobs,* for appellant.

*Clarence M. Lyle* and *Marshall L. Howell,* for appellee.

STEERE, J.   This action was begun by a writ of attachment issued out of the circuit court of Cass county, November 7, 1912, on the strength of an affidavit made by plaintiff, alleging that:

"This deponent further says that he (she) has good reason to believe and does believe that the said Daniel W. Stevens is about to dispose of a portion of his property with intent to defraud his creditors," etc.

Plaintiff and defendant were husband and wife, and said Daniel W. Stevens was then hopelessly demented, totally incapable of transacting any business, and under guardianship of his son, who had given a bond to the probate court for the faithful performance of his duties as such.

Plaintiff and defendant were married in 1904, she being his second wife.   Defendant was then and continued to be the owner of a farm in Cass county consisting of 288 acres, where they resided from the time of their marriage until about the time of commencing this suit, with the exception that from 1909 to 1911 defendant spent much of his time in the Canadian Northwest, where he took up and was improving a 320-acre tract of land.   During his absence plaintiff remained upon the farm in Cass county, managing the same, and sending him money from time to time.

This action is to recover the amount of loans claimed to have been made him during that period.

After defendant's return from the Northwest in 1911, he suffered a stroke of paralysis from which he did not recover, and in the spring of 1912 his mental condition was such that it was deemed necessary to appoint a guardian for him, and his son Samuel Stevens, plaintiff's stepson, was appointed and proceeded to take charge of his business affairs. Plaintiff and defendant were then residing upon the Cass county farm, and owing to his demented condition she desired him sent to an asylum for the insane, to which the son objected and took him to the son's home in Battle Creek. Strained relations developed between plaintiff and her husband's guardian and other stepchildren which resulted in litigation, and under this attachment she seized all tools, stock, crops, and other personal property on said farm, where she then resided, inventoried at $2,613.75.

When plaintiff and defendant married she was a woman of some means, and he borrowed money of her from time to time. Defendant, though apparently a man of some business ability and energy, was prone to indebtedness to the extent of his credit. On November 7, 1912, the same day this action in attachment was begun, she also commenced a suit in chancery to foreclose two mortgages which she held upon the Cass county farm, one for $5,000 given her by defendant, April 20, 1909, and another of something over $2,000 originally given by defendant to a certain bank and subsequently assigned to her. The son as guardian assumed the active defense in this litigation and has removed both cases to this court by appeal. The record of the foreclosure suit goes very fully into the domestic and business relations of these parties during their married life, and much of the matter there contained is duplicated in this case.

It has been suggested in counsel's brief on the one side and acquiesced in on the other, if it can be done, that the two cases should be considered and disposed of together. Inasmuch as one of the cases is a chancery suit, to be heard here *de novo,* and the other an attachment proceeding on the law side of the court, in which only questions of law are considered, and parties insist upon not only their equitable but all legal and technical rights on all questions involved, with 94 assignments of error urged and argued here, there seem to be insurmountable obstacles to following such suggestion.

Plaintiff's claim in this case relates entirely to numerous items of money alleged to have been loaned to defendant, mostly while he was in the Northwest, between 1909 and 1912 inclusive, of which a bill of particulars was demanded and filed; it being conceded and asserted by her that all money she loaned him prior to his giving her the $5,000 mortgage was included in said mortgage. On trial of the case in the circuit court by jury, a verdict and judgment were rendered and entered for the sum of $2,574.38, in plaintiff's favor.

We are impressed from reading this record that, for the issue involved, the evidence took a remarkably wide range over the domestic and business relations of these parties, touching on remote subjects, which in certain instances were rather calculated to mislead and prejudice than to enlighten the jury on the real issue.

The distinct issue on this trial was the amount of money, if any, loaned by plaintiff to her husband, after the date of the $5,000 mortgage and exclusive of that covered by it. Items set out in a bill of particulars were the proper subjects of inquiry. The difficulty of limiting the testimony to that legitimate line of inquiry, where the real parties litigant were a second

wife and adult stepsons and stepdaughters, at variance over the estate of a husband and father, who, though yet breathing, was dead to the world, is not to be ignored, and parts of the testimony apparently immaterial can be passed by as not necessarily prejudicial.

We are, however, forced to the conclusion that certain of the testimony laid before the jury was foreign to the issue, of a character tending to create sympathy and prejudice in plaintiff's favor, portions in violation of section 10213, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12856), which precludes husband and wife testifying for or against each other except in certain instances, and taken as a whole, palpably gave a coloring to the case by violating those rules of evidence deemed essential to an impartial jury trial.

Defendant was shown to be physically and mentally helpless and incompetent, his mind and memory gone, totally incapable of furnishing any information upon the matters in litigation, and was defended by his "personal representative," the son, who had been appointed his guardian. It is contended that all the reasons for the statute (section 10212) protecting the estates of deceased persons by precluding the opposite party from testifying to matters equally within the knowledge of the deceased are here applicable, and the statute should be applied, in cases where the opposite party is hopelessly insane—mentally deceased—and equally incapable of testifying. This is strictly a statutory provision. Insane persons are not "deceased persons." Courts are not at liberty to read into the statute and pass upon degrees of insanity. If the reason for the statute applies to those mentally incompetent, it is for the legislature and not the courts to supply the statute. But the reasons thus urged suggest the necessity of particular care in cases of this kind, where the defendant is silenced by his afflictions,

to restrict the opposite party to clearly competent evidence, to the exclusion of all irrelevant testimony which might be prejudicial.

The exception to said section 10213, which allows a husband or wife to testify against the other in relation to their separate property or interests, has been often and liberally construed by this court; but the rule stated in *Hunt* v. *Eaton,* 55 Mich. 362 (21 N. W. 429), that "no communications passing between husband and wife in the confidence of married life can be given in evidence by either without the other's consent, unless they relate to the title of separate property in litigation between them," has not been departed from. Plaintiff was entitled to testify fully as to communications with defendant relating to issues in this case, as made by the items in her bill of particulars. None of these matters arose before 1909. She was allowed to testify that her husband knew she had money before she married him, that she had loaned him $1,500 before that event, that he told her he had a farm of 200 acres, and she "commenced to learn he was in debt in the spring of 1905, some six or seven months after our marriage," that his farm was mortgaged for some $10,000 or $12,000 at that time, and permitted to relate the details of their business and domestic relations from that time on, including not only the assistance she claimed to have given defendant but other members of his family. She testified to loaning money to "Sam Stevens," defendant's guardian, saying:

"He owes me in the neighborhood of $600 now, that I loaned him. * * * At times I would loan Jim; that is his other son. One time he was going to his uncle's funeral and he didn't have any shoes, and I gave him $5 to get shoes. * * * When his daughter went out, that is Alvina, I loaned her $20 to go with, * * * and various other times I helped her."

While this line of examination was progressing against defendant's objection, and her counsel had asked, "Q. Were any of these loans repaid?" and she answered, "Never," the court remarked, "That doesn't tend to show the loan in this instance, does it?" her counsel replied, "No, but it tends to show the fact that she had the money at that time that she could loan and tends to show the fact further that they had need to borrow." A neighbor's wife, who had known defendant for 30 years, was allowed to testify, without giving exact dates, but apparently with reference to about the time the parties were married:

"Well, he first spoke to us about getting money because he wanted to go and get her because she had money and he had to have money."

And again:

"Well, he told us he had got her money. * * * He said he was going to have her sell all her real estate and bring her money down here."

Without going further into the details of such testimony, we are well satisfied that much of the evidence of that character was not material to the issue, and in no respect tended to prove any of the different items set out in plaintiff's bill of particulars, and was prejudicially calculated to create the impression plaintiff was a victim of, and being exploited by, defendant and his family, as well as in some instances being in violation of the statute relative to husband and wife testifying against each other.

The latitude permitted, along the lines pointed out, on the stated theory that "there is no other way to get at the truth of the matter only to get the whole thing before the jury," should not be extended to irrelevant and immaterial things relating to other times and persons. The evidence should have been more strictly confined to the legitimate and distinct issue presented by the pleadings. We are constrained

to hold that the issue before the jury was colored and confused with collaterial issues and incompetent, prejudicial testimony subversive of a fair and impartial trial.

The judgment is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.