EDWARD KLINGENSMITH et al., Appellees, v. GEORGE KLINGEN-
SMITH et al., Appellants; J. E. HAMILTON,
Intervener, Appellee.

**MORTGAGES:** Absolute Deed as Mortgage. A quitclaim deed, abso-
lute in form, of grantor's expected (but practically assured) interest
in his aged father's estate, for a consideration of $900, when the
interest ultimately amounted to $6,000, will be decreed a mortgage,
when the grantor shows that he so intended the transaction, and
when the grantee, by reason of the gross inequality, must be held
to have had a like intent. And this is true even though the grantor
was guilty of a measure of carelessness in executing the deed with-
out a defeasance clause.

*Appeal from Madison District Court.*—H. S. DUGAN, Judge.

NOVEMBER 22, 1921.

REHEARING DENIED MARCH 11, 1922.

ACTION in equity to have canceled quitclaim deeds exe-
cuted by plaintiff, conveying his expectant interest as heir in
certain real estate, and to have same construed as security for
moneys advanced by defendants on behalf of plaintiff. Decree
entered finding the equities in favor of plaintiff.—*Affirmed.*

*Sam C. Smith* and *W. T. Guiher,* for appellants.

*J. A. Merritt* and *W. S. Cooper,* for appellees.

DE GRAFF, J.—Samuel Klingensmith died intestate June 12, 1917 seized of certain Iowa real estate of the value of about $28,000, and personal property of the value of about $2,500. His heirs at law are Edward Klingensmith plaintiff and Geo. Klingensmith, Victoria Klingensmith, Melissa Bonham and Sarah Smith defendants herein.

The senior Klingensmith at the time of his death was a widower and the parties to this action are his children. It appears that prior to his father's death the son Edward had borrowed from the local banks small sums of money and his father had signed notes as surety with him. In June 1915 the various loans aggregated about $900. The banks holding these notes were insisting on payment and this fact seemed to worry the senior Klingensmith who was then about 84 years of age. Edward possessed little of this world's goods, and as the father was not desirous of placing a mortgage on his farm, it was talked over and orally agreed and understood between Edward and the other children that they would advance a loan sufficient to pay off Edward's indebtedness, and in consideration thereof Edward would quitclaim to them his expectant interest as heir in his father's estate. This was done.

It is the contention of the plaintiff Edward that the quitclaim deed so executed was executed and delivered upon the express agreement and understanding that after the father departed this life that his undivided one-fifth share of the estate should be held as security for the payment of the advances so made by the other children in liquidating his indebtedness.

It is the contention of the defendant-grantees that Edward intended to convey absolutely all of his title and interest in his father's estate, and they specifically deny that the grantor Edward has at this time any right title or interest as an heir at law in the estate of the decedent Samuel Klingensmith.

It is well established that a deed intended to be a mortgage creates an equitable mortgage. *Fort v. Colby,* 165 Iowa 95; *McGuire v. Halloran,* 182 Iowa 209. This principle is predicated on the maxim that equity regards that as done which

ought to be done. It is primarily a question of intent and this intent is found in the nature of the transaction and what was said and done at the time and immediately prior to the execution of the instrument in question. A court of equity does not look merely at the form of the thing, but if necessary will read into the instrument an implied defeasance clause.

Prior to the execution of the quitclaim deed in the first instance Edward, George, Melissa and Victoria talked over the matter of the payment of the indebtedness owing by Edward. Without stating in detail this conversation it was finally agreed among them that each would contribute a certain amount for this purpose. This apparently was approved by the father. Edward testified that at that time he told his brother and sisters; ''I will secure you with my interest in the estate.'' Subsequently George went to the Citizens Bank and had the deed prepared. Later Melissa, Edward and his wife called at the bank and the deed was signed by Edward and his wife. Edward states that he did not examine the paper further than ''to see where to sign his name, supposing that it was a paper providing to give them security.'' Edward's wife on that occasion had one eye bandaged and the other badly inflamed. She could scarcely see where to sign her name and did not read the deed. About a week thereafter Melissa spoke to the other sister, Sarah Smith, who had not been a party to these negotiations, and her name was not included as one of the grantees in the deed. After discussing the proposition Sarah with her husband went to the bank and took up notes in the sum of $271.83, the husbands of Melissa and Sarah respectively contributing one half.

In the execution of the first quitclaim deed Edward conveyed only an interest in an expectant estate. He then had simply a contingent right of future enjoyment. He had nothing vested in him, nothing that he could convey. His father had full legal title to the farm, and he only could vest an interest in Edward which could be conveyed by him. This the father did not do.

Appellants have injected into this case what is termed a ''family settlement'' and rely upon *Jones v. Jones.* 46 Iowa 466. The *Jones* case is clearly distinguishable from the instant case. Furthermore the question of family settlement was not pleaded

by the defendants until eight days after the case was tried and submitted. Waiving this matter of pleading there is nothing in the record to establish a family settlement. The whole transaction focusing on the 23d day of June 1915 had to do with a question of raising money sufficient to lift Ed's notes at two banks in Lorimor. Furthermore the ancestor at that time parted with nothing nor did he agree to convey any part or parcel of his property to anybody.

In the instant case the deed recited $1.00 and other valuable considerations. Parol evidence is always permissible to explain the real consideration in such cases. When we compare the consideration in fact given with the actual value of Ed's share in the decedent's property it is grossly inadequate, and sufficient to charge the defendants with constructive fraud in their attempt to preclude the rights of Edward. See *Richey v. Richey*, 189 Iowa 1300; *Betts v. Harding*, 133 Iowa 7.

Upon the death of the ancestor his real estate descends *eo instanti* to his heirs. Edward was one of the heirs, and before his rights as heir may be denied or terminated facts and circumstances must be established that would work an equitable estoppel. The mathematics of this case show that the plaintiff parted with about $6,000 in value for a consideration of less than $1,000. Equity refuses to recognize such inequality.

Defendants must have been advised or have realized upon the death of the father some two years after the execution of the quitclaim deed that this deed conveyed nothing to them absolutely. It appears that George visited Ed in Des Moines and upon the representation that he had another paper for Ed and his wife to sign in order that a loan might be made and that the estate could be settled without administration secured their signature to it. Ed had absolute confidence in his brother, and without more ado accompanied him to a notary's office and there executed another quitclaim deed identical in terms with the first. Waiving the question of fraud in the execution of the second deed, which was pleaded by plaintiff and which issue was determined by the trial court in favor of plaintiff, we determine this case upon the theory of an equitable mortgage, the dominant note in the record. The mere execution of a

second instrument without other or further consideration would not change the equitable character of the first deed, for once a mortgage always a mortgage.

It is also shown that a so-called waiver of notice was prepared, taken by George to Edward's working place in Des Moines in the early morning "while the lights were still shining," and explained to him that he had a waiver to sign in order to save costs of administration. On these representations and without reading the waiver, Ed signed it. Later it was discovered that the so-called waiver was in fact a waiver of all of Ed's interest in both the real estate and personal property of the decedent. This is also tainted. It will be observed that Edward's share of the personal estate of his father is nearly sufficient to pay the other heirs the advancements which they made to lift his indebtedness.

The proposition in brief may be stated as follows: the conveyance of the expectant estate is void in law but may be upheld in equity on the broad principle of equitable estoppel, provided that the transaction involves an adequate and full consideration and is free from fraud either actual or constructive. See *Rickey v. Rowland*, 130 Iowa 523. We are convinced that the payment of Edward's indebtedness was intended merely as a loan, and this finds some support in the fact that the evidences of indebtedness were retained by the heirs who paid it. In other words the evidences of indebtedness were not canceled and returned to Edward.

Plaintiff's claim must find favor under the benign doctrines of equity jurisprudence. The eyes of the chancellor never look obliquely at such transactions. Equity will lend its aid, when a person has been induced to act through the inequitable conduct of another, and will relieve him from the consequences of his error, and it is immaterial whether it arises from a mistake of law or of fact. It is clear that the quitclaim deed does not express the true agreement between the parties, even though it be conceded that Edward knew that he was signing a quitclaim deed in the first instance. He did not intend it to be other than a mere security in the event he ever inherited anything from his father. The defendants are seeking to take advantage of their relations with this plaintiff, and obtain a

more favorable contract than was intended. They are entitled to take the moneys with interest advanced by them on Edward's behalf. To take more would be obnoxious to every sense of fairness, honesty and right.

The lower court was clearly justified in holding that to place defendants' construction upon this transaction would be unconscionable. As was said in *Stone v. Moody*, 41 Wash. 680 (84 Pac. 617):

"We do not believe that a court of equity should hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness."

The trial court was right in its findings and the judgment entered is therefore—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.