JOHN GANNON, Appellant, v. ERNEST GRAHAM et al., Appellees.

No. 39832.

JUNE 23, 1930.

REHEARING DENIED DECEMBER 13, 1930.

*Mulvaney & Mulvaney,* for appellant.

*Ladd & Ladd* and *Howe & Howe,* for appellees.

MORLING, C. J.—In 1918 or 1919, defendant Ernest Graham became indebted to the Valeria Savings Bank for $5,000 on promissory notes. On November 24, 1922, he executed to the bank an instrument entitled "assignment of expectancy in estate," which declared:

"For value received I hereby sell, assign and set over unto

the Valeria Savings Bank of Valeria, Iowa, all my claim in expectancy to the estate of my father Norman A. 'Graham of Des Moines, Iowa, which I may acquire as heir at law or devisee or legatee of my said father * * * the amount of money or property which shall be received by the Valeria Savings Bank of Valeria, Iowa, under this assignment shall first be used to extinguish and pay up the indebtedness which I owe said bank and which I may owe said bank at the time I shall be entitled to the money or property from the estate of my father. * * * Any excess * * * shall be paid to me. And if the amount * * * which I receive from said estate shall not be sufficient to pay * * * my indebtedness to said bank in full that [then] said money and property shall be applied on my indebtedness to said bank as far as it will go.''

On September 1, 1924, he executed to the bank renewal notes for this indebtedness. About October 18, 1924, plaintiff, who was president of the Valeria Savings Bank, was required by the bank examiner to pay to the bank the amount due on this paper, which he did, and took an assignment of it. On March 2, 1926, Ernest filed petition in bankruptcy, in which he listed the notes in question. Plaintiff filed no claim, and took no part in the bankruptcy proceedings. On December 9, 1926, defendant Ernest was discharged from all his provable debts.

On June 18, 1926, after the filing of the petition in bankruptcy, the father died, leaving a will dated January 18, 1926, by which there was given to Ernest for life the income from a farm. This suit, so far as we are now concerned, is to enforce the assignment by subjecting the bequest to the payment of the notes mentioned and foreclosing the interest of the defendant Ernest in the bequest.

The defenses are: (a) That defendant's signature to the assignment was procured by fraud; (b) that the assignment is void because made without the knowledge or consent of the father; (c) that the assignment or mortgage of the expectancy was, at most, an executory agreement, creating no lien during the father's lifetime; and that the discharge in bankruptcy while the father was still living discharged the assignment or mortgage, as well as the personal liability upon the notes.

Defendant also contends that there was no adequate con-

sideration for the assignment. The assignment was made only  as security for the payment of a debt admittedly just and owed to the assignee. The consideration is adequate. 41 Corpus Juris 385.

I. Defendant testifies, in substance, that he did not know or understand, at the time the paper was executed, what it was; that he was not given sufficient time to read it, and its contents were not made known to him. His testimony on this subject is not convincing, and is overcome by the opposing evidence.

II. It has been held that the assignment of an expectancy in the estate of a living ancestor is void if made without the ancestor's knowledge or consent. *Stevens v. Stevens*, 181 Mich. 449 (148 N. W. 229); *McClure v. Raben*, 125 Ind. 139 (25 N. E. 179); *Flatt v. Flatt*, 189 Ky. 801 (225 S. W. 1067); *Elliott v. Leslie*, 124 Ky. 553 (99 S. W. 619). See 5 Corpus Juris 854 *et seq.*; 49 Corpus Juris 1117. The rule in this jurisdiction is that an assignment of such an expectancy, though it will be carefully scrutinized, and is not favored, yet, if it is made in good faith, for an adequate consideration, and without fraud, and if it is not otherwise unconscionable or invalid, will be sustained and enforced in equity. *Lee v. Lee*, 207 Iowa 882; *Berg v. Shade,* 203 Iowa 1352; *Richey v. Richey,* 189 Iowa 1300; *Richey v. Rowland,* 130 Iowa 523; *Klingensmith v. Klingensmith,* 193 Iowa 350.

III. The assignment was executed merely by way of security. If operative at all, it was as a mortgage, incidental to the debt. The main point of contention is whether or not the mortgage  of the expectancy survived the discharge in bankruptcy, granted on adjudication of bankruptcy after the execution of the mortgage, but before the death of the father. Section 67 of the Bankruptcy Act (9 United States Comp. Stat. [1916], Section 9651) prescribes what are and what are not liens within the purview of the act, and among other provisions declares:

"(d) Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present

520

consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this Act.''

This section applies only to liens on the estate of the bankrupt at the date of the adjudication in bankruptcy. At the date of the adjudication, defendant's father was living, and defendant had no then present interest or right of property in his father's estate which would pass to the trustee. *Mitchell v. Winslow,* 2 Story 630; *In re Baker,* 13 Fed. (2d Ser.) 707; *Dioguardi v. Curran,* 35 Fed. (2d Ser.) 431; *In re Lage,* 19 Fed. (2d Ser.) 153; *Bank of Elberton v. Swift,* 268 Fed. 305. If, however, the plaintiff, by the mortgage of the expectancy, acquired a lien upon defendant's interest in his father's estate when it should come into defendant's possession, such lien, not being one that was dissolved by the terms of the Bankruptcy Act or repugnant to it, remained, notwithstanding the discharge of the debt which it secured. 7 Corpus Juris 410. The discharge released defendant from his legal liability to pay his provable debts. The moral obligation and such liens as were not dissolved by the terms of the Bankruptcy Act or as were not repugnant to that act remained. *Zavelo v. Reeves,* 227 U. S. 625, 629 (57 L. Ed. 676, 678); *Fierce v. Fleming,* 205 Iowa 1281; *Shively v. Globe Mfg. Co.,* 205 Iowa 1233, and cases cited; United States Code Annotated, Title 11, Section 32, page 110 *et seq.,* Section 107, page 152 *et seq.*

The precise question here involved came before the English Court of Chancery in *In re Lind,* 1 Ch. Div. (1915) 744, and before the Court of Appeal, 2 Ch. Div. (1915) 345 (84 L. J. Ch. [N. S.] 884). In that case Lind, in 1905, mortgaged his then expectant share in the estate of his mother, who was then living, though insane. In 1908, he was adjudicated a bankrupt, and in 1910, obtained his discharge. The mortgagee did not prove in bankruptcy. In 1914, the mother died, and Lind's share in her estate, as such, thereupon came into existence. The plaintiffs in that case, to whom Lind, after his discharge in bankruptcy, had assigned his expectant share in the estate, contended that the mortgages made prior to the date of the discharge ''were in law nothing but contracts to assign, creating debts provable

in bankruptcy, and that the effect of the bankruptcy and the order of discharge therein has been to release Lind from all liability under such contracts, and accordingly to render the assignments wholly ineffectual.'' The authorities were extensively reviewed by the participating justices of the two courts, whose reasoning and conclusion are sufficiently indicated by the language of one of them, as follows:

''It appears to me to be manifest from these statements of the law that equity regarded an assignment for value of future-acquired property as containing an enforceable security as against the property assigned, quite independent of the personal obligation of the assignor arising out of his imported covenant to assign. It is true that the security was not enforceable until the property came into existence, but nevertheless the security was there, and the assignor was the bare trustee of the assignee, to receive and hold the property for him when it came into existence. Warrington, J., in the court below, put his view into these words (1): 'In the present case I am of opinion that the mortgagees were, at the time of the bankruptcy, entitled, not merely to the benefit of a personal obligation on the part of the mortgagor, resulting in a claim for damages, but to a prospective interest in the distributive share in question, taking effect automatically on the death of Florence Lind.' For the reasons stated above, I think that there is a question whether the personal obligation on the part of the mortgagor in a case like the present results in a claim for damages, if by that is meant only in a claim for damages, but I quite agree in the latter part of the learned judge's statement of the position of the mortgagees.''

The identical question was presented and ruled in the same way in *Bridge v. Kedon,* 163 Cal. 493 (126 Pac. 149, 43 L. R. A. [N. S.] 404), in which the conclusion reached was:

''The assignment is treated in equity as a present contract to convey the future interest, a contract which creates a trust as soon as the interest becomes absolute; and this is a present existing right by contract, which the discharge in bankruptcy does not avoid or terminate. The continued existence of the debt as a personal obligation to pay money is unnecessary to

the enforcement of an equitable charge or lien upon specific property.''

A like result was reached by one of the appellate courts of Illinois in *Dumont, Roberts & Co. v. McDougal*, 200 Ill. App. 583, and by the Supreme Court of Dakota in *Thompson Yards v. Richardson*, 51 N. D. 241 (199 N. W. 863), a case which involved a mortgage upon unplanted crops. See 3 Pomeroy's Equity Jurisprudence (4th Ed.), Sections 1285 to 1290. Section 1288 says:

."In other words, the doctrine of equitable assignment of property to be acquired in future is much broader than the jurisdiction to compel the specific performance of contracts. In truth, although a sale or mortgage of property to be acquired in future does not operate as an immediate alienation at law, it operates as an equitable assignment of the *present possibility*, which changes into an assignment of the *equitable ownership* as soon as the property is acquired by the vendor or mortgagor; and because this ownership thus transferred to the assignee is equitable, and not legal, the jurisdiction by which the right of the assignee is enforced, and is turned into a legal property, accompanied by the possession, must be exclusively equitable * * *.''

In *Mitchell v. Winslow*, 2 Story 630, Justice Story had before him the case of a conveyance of all machinery, tools, and implements in a named manufactory ''of every kind thereunto belonging and appertaining, together with all * * * which we [the mortgagors] may at any time purchase for four years from this date, and also all the stock which we may manufacture or purchase during said four years.'' Thereafter, the grantors were declared bankrupts, and an assignee was appointed. Shortly before the filing of the petition in bankruptcy, the mortgagee took possession of the property, including that which had been made and purchased after the execution of the mortgage. The assignee in bankruptcy petitioned for authority to take possession. Justice Story reviewed the authorities at length, concluding, as a result of them, that:

''Wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal proper-

ty, whether then owned by the assignor or contractor or not, or if personal property, whether it is then *in esse* or not, it at-taches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto under him, either voluntary, or with notice, or in bankruptcy.''

See 2 Story's Equity Jurisprudence (13th Ed.), Section 1231; *Thompson v. Fairbanks,* 196 U. S. 516 (49 L. Ed. 577); 5 Corpus Juris 856; 2 Ruling Case Law 606.

This court had before it a somewhat analogous question in *Bisby v. Walker;* 185 Iowa 743. In that case a testator had bequeathed to his wife all of his property for life, with remainder to the children of testator's daughter Ellen, then living, ''in equal shares, to have and to hold the same forever, without right of alienation of any of the real estate, during the life of their mother [Ellen] * * *'' One of these grandchildren, during the lifetime of the testator's widow, incurred indebtedness, to secure which she mortgaged her interest in the real property of testator's estate. Later, she filed voluntary petition in bankruptcy, listing among her creditors the mortgagees, and listing her interest in the land under the will. The bankruptcy court determined that she had no interest in the real estate at that time, and that the trustee took no right to it. The mortgagor was discharged in bankruptcy. After such discharge, the testator's widow died. In suit for partition of the land bequeathed by the will, the mortgagor alleged that the mortgages were not claims or liens against the land, and asked that her interest be quieted against them. This court held that the mortgages operated by estoppel to convey the afterward-acquired fee. After holding that the subsequently acquired vested remainder inured to the benefit of the mortgagee by way of estoppel, this court further said:

''The only consequence of a discharge in bankruptcy is to suspend the right of action for a debt against the bankrupt person. If the creditors have a lien or equitable claim by mortgage or otherwise upon the property of the bankrupt, such right or rights remain unaffected. The independent collateral agreement given by way of security outlives the remedy on the debt which it was given to secure. [Here follows reference to Section

67(d), Bankruptcy Act.] \* \* \* Nor did the discharge of the bankrupt obviate the attachment of the mortgages as liens on the after-acquired property. Subsequent to her discharge, she asserted her claim in and to the property, which the trustee in bankruptcy declined to take, as she might lawfully do, and the property stood in the same relation to the incumbrances thereon as before the petition in bankruptcy had been filed. In other words, the rights of the mortgagor and mortgagees were precisely the same as before, save that personal liability on the indebtedness might not be enforced in an action personally against the mortgagor as a debtor, owing to her discharge in bankruptcy. We have dealt with the remainder in this portion of the opinion on the theory that it was contingent, but without the design of so determining. Our conclusion is that, whether contingent or vested, the mortgages were rightly found enforcible against Mrs. Bisby's one-third interest in the real estate.''

It will be observed that the discussion thus quoted was not essential to the adjudication. We have made these extensive quotations in order that the premises from which the conclusions were drawn may clearly appear: namely, that, though the assignment or mortgage of a mere expectancy does not operate as a present conveyance, and though necessarily the mortgagee or assignee of such an expectancy takes and can take no present property right in the ancestor's estate, he obtains by the contract a present possibility and a transfer to himself of the prospective interest, which automatically takes effect on the death of the ancestor.

A contrary conclusion with respect to a mortgage executed prior to bankruptcy on crops grown afterwards was reached by the Supreme Court of Alabama in *Butler Cotton Oil Co. v. Collins,* 200 Ala. 217 (75 So. 975). It was there held that, at the time of the adjudication in bankruptcy and discharge, the property had no existence, actual or potential,—it was a mere expectancy. There was then nothing to which a lien could attach. In the somewhat analogous case of an assignment of future earnings, the courts have arrived at variable conclusions.' It has been held that an assignment of wages to be earned under an existing contract of employment survives the discharge in bankruptcy. *Mallin v. Wenham,* 209 Ill. 252 (70 N. E. 564, 65

L. R. A. 602, 101 Am. St. 233) ; *Citizens Loan Assn. v. Boston & Maine Railroad,* 196 Mass. 528 (82 N. E. 696, 124 Am. St. 584, 14 L. R. A. [N. S.] 1025 ; 13 Ann. Cas. 365).

The reasoning in the Massachusetts case is that the employee under an existing contract of employment has an actual interest in the wages to be earned, unjustifiable interference with which contract is a remediable injury ; that money to accrue from such services is not properly an expectancy or mere possibility, but a present existing right of property in potential possession ; that the assignment of future earnings which may accrue under such a contract is valid and enforcible at law and in equity.

In *Leitch v. Northern Pac. R. Co.,* 95 Minn. 35 (103 N. W. 704, 5 Ann. Cas. 63), it was held :

"* * * when the debtor filed his petition in bankruptcy, and when he received his discharge, [plaintiff] had no lien on or vested security in the wages of the debtor thereafter to be earned by virtue of his contract, which was to take effect as an assignment when the wages were earned. The plaintiff then had, at most, a mere expectancy, depending on contingencies. We accordingly hold that the discharge in bankruptcy released the debtor from any liability of having his wages thereafter earned applied in payment of the debt from which he had been discharged."

Likewise, in *Levi v. Loevenhart & Co.,* 138 Ky. 133 (127 S. W. 748), it is said :

"Undoubtedly the order in question secured to plaintiff an equity,—suspended, as it were,—which attached immediately that the wages were earned, and secured to him a priority in the earned wages to the extent stipulated in the order, superior to that of any other creditor; but such right did not attach until the wages were earned. The order was valid only so long as the indebtedness of plaintiff remained unsatisfied. It is of no higher or greater dignity than the debt. It is merely an agreement that there shall be appropriated out of the debtor's wages a stipulated sum, to be credited on his debt until it is satisfied: i.e., paid or discharged. By his discharge in bankruptcy Metzler settled every debt that he owed—was entirely, completely, and finally relieved from any and all liability on account thereof; and, as

plaintiff's claim was set up and described in the proceeding in the bankruptcy court as a debt owing by Metzler, it was likewise canceled, satisfied, and settled, and, being settled, the conditions of the order were fully satisfied, and appellee relieved from all liability thereunder.''

Discharge was held to avoid assignment of wages in *In re Home Discount Co.*, 147 Fed. 538; *In re West,* 128 Fed. 205.

The majority of the court are of the opinion that only actually existing liens upon property of the bankrupt are saved from the effect of a discharge. In the case of an assignment of mere expectancy,—at least when not assented to by the ancestor,—no present existing property right in the assignor exists or is assigned. The assignor may die in the ancestor's lifetime. In such case, his heirs would take, not from him, but from the remote ancestor. 18 Corpus Juris 817; *McAllister v. McAllister,* 183 Iowa 245. A will may be made disinheriting him. The estate itself may, in the ancestor's lifetime, be dissipated. The assignor in these conditions can have not even a potential interest in the estate. He has an expectancy or possibility only. If the assignment is made and received in good faith, for an adequate consideration, and without fraud, and is not otherwise unconscionable or invalid, equity will sustain and enforce it as a contract to assign. In the case before us, however, the purported contract could in no event be given effect other than as a contract to assign. Such assignment is, therefore, executory only, and subject to contingencies, and incident to the debt. The principal thing, the debt, has been discharged.

''But until the event has happened, the party contracting to buy has nothing but the contingency, which is a very different thing from the right immediately to recover and enjoy the property. He has not, strictly speaking, a *jus ad rem,* any more than a *jus in re.* It is not an interest in the property; but a mere right under the contract. Indeed, the same effect takes place in such cases if there be an actual assignment; for, in contemplation of equity, it amounts, not to an assignment of a present interest, but only to a contract to assign when the interest becomes vested.'' 2 Story's Equity Jurisprudence (10th Ed.), Section 1040c.

See, also, 2 Ruling Case Law 606; *Bayler v. Commonwealth,* 40 Pa. St. 37 (80 Am. Dec. 551) ; *In re Estate of Garcelon,* 104 Cal. 570 (38 Pac. 414, 43 Am. St. 134; 32 L. R. A. 595). If we accept the rationale of 3 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1288, and the authorities previously cited, nevertheless it is only as an executory contract that the assignment operates. It "operates as an equitable assignment of the *present possibility,* which changes into an assignment of the *equitable ownership* as soon as the property is acquired \* \* \*."

The assignee takes presently no title or interest whatever. He takes nothing at law. His sole remedy is to go into equity and enforce that which is, for the purpose of doing equity, construed as a promise to convey the property, or to hold it in trust if and when it shall be acquired.

Until the death of the ancestor, the assignee has only a possibility, which, on the ancestor's death, is, on equitable principles, particularly on the maxim that equity considers that done which ought to be done, transmuted into an interest in the property which the assignor may be decreed to hold in trust. On this theory, there is in existence prior to the death of the ancestor only a possibility, and an imputed agreement to transmute the possibility into a property right on the contingency that the property right matures.

At the time of the adjudication and discharge, the plaintiff had no existing lien. He had only that which equity would transmute into a covenant to assign if the property should come into existence. Plaintiff, then, had merely the covenant or promise of the defendant, without any existing property right. A mere promise or agreement of such character, unconnected with an existing property right, is so of the substance of and inseparable from personal remedies to enforce the obligation that it necessarily expires with the expiration of personal remedies. To keep in force a remedy so personal in its nature must *pro tanto,* or as the occasion arises, keep the obligation in force. The obligation, as respects all personal remedies upon it, as such, having expired, ought not to be continued in order that a lien which cannot, from the necessities of the case, exist at the time of the discharge, may be subsequently created. At the time of the adjudication, there was no lien. The moral obligation might be continued after discharge, to the extent necessary for the purpose

of enforcing an existing lien, but ought not to be continued in order to bring into existence a future lien. To sustain such an assignment as an existing lien would, to a serious extent, thwart the purpose of the Bankruptcy Law. It would not altogether harmonize with the rule of this jurisdiction that assignments of such expectancies are not favored. We are not disposed to enlarge the field of recognition of them. We hold as the law of this state that an assignment such as that in controversy creates no existing enforcible lien upon the prospective inheritance of the assignor, and that the possibility of a future decree in equity, enforcing such an assignment, confers no property right which will relate back to the date of the assignment.

Whether or not the assignment, if absolute, and, but for the bankruptcy, otherwise enforcible, would have given rise to a provable claim, or to a remedy surviving the discharge, is a matter upon which we express no opinion.—*Affirmed.*

EVANS, FAVILLE, DE GRAFF, ALBERT, WAGNER, and GRIMM, JJ., concur.

STEVENS and KINDIG, JJ., dissent.

STEVENS, J. (dissenting)—I regret my inability to concur in the opinion of the majority in this case. Many of the cases cited by the majority sustain the conclusion expressed in this dissent. A restatement of some of the matters covered by the opinion will not, however, be out of place.

It has been held in a few jurisdictions that the assignment of an expectancy or mere possibility of an interest in the estate of the ancestor by an heir is void if made without the knowledge or consent of such ancestor. *Stevens v. Stevens,* 181 Mich. 449 (148 N. W. 229) ; *McClure v. Raben,* 125 Ind. 139 (25 N. E. 179) ; *Flatt v. Flatt,* 189 Ky. 801 (225 S. W. 1067).

The holding of these cases is in direct conflict with the overwhelming weight of authority. The question arose in this state in *Mally v. Mally,* 121 Iowa 169, but was not passed upon. As the court found that the evidence was insufficient to establish the oral assignment alleged in that case, it was unnecessary to determine the issue as to the validity thereof. The reasons, largely of public policy, upon which the decisions referred to are rested, are fully stated in the opinion of this court in the

*Mally* case, and do not require repetition. Such assignments may, and no doubt do, frequently result in passing the property of the ancestor to a stranger, to whom he would never have given it. The question was again referred to in *Richey v. Rowland,* 130 Iowa 523, but not passed upon. It was again mentioned in *Aultman Eng. & Thresh. Co. v. Greenlee,* 134 Iowa 368, without decision. The writer of the opinion in *Stennett v. Stennett,* 174 Iowa 431, refers to the proposition as an open one in this state. Obviously, however, the contention that the assignment of the interest as an expectant heir by a·child in the estate of his ancestor is void unless made with the knowledge and consent of the parent has not met with favor in this state. It must be, therefore, regarded as the settled rule in this jurisdiction that the assignment of a naked possibility or expectancy of an heir apparent to an estate, if made for an adequate consideration, in good faith and without fraud, is valid, and enforcible in equity. *Richey v. Rowland,* supra; *Richey v. Richey,* 189 Iowa 1300; *Berg v. Shade,* 203 Iowa 1352; *Lee v. Lee,* 207 Iowa 882.

The Bankruptcy Act of the United States (9 United States Comp. Stat. [1916], Section 9651[d]), provides that:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this Act."

If, therefore, it were conceded that a lien upon the expectant interest of appellee in his father's estate arose immediately and attached thereto upon the execution of the assignment, such lien would in no wise be affected by the discharge in bankruptcy. No such lien immediately attached to the property. The mere possibility of an interest is assignable only in equity, and whatever right appellant has, or may at any time have had, is purely equitable. The discharge of appellee in bankruptcy became immediately effective on the date when he was adjudged a bankrupt. This was prior to the death of the ancestor. The property was then under the absolute control of the father, who might dispose of it in any manner that he saw fit. No immediate interest therein vested in the assignee at the time, or by virtue, of

the assignment. Whatever its quality may have been, that which passed to the·assignee was contractual in character. The effect of the discharge in bankruptcy was not to destroy the technical relation between appellee and the holder of the notes executed to the bank. The discharge went only to the remedy, and did not destroy the debt. The moral obligation remained, and constituted a sufficient consideration for a new promise to pay. *Fierce v. Fleming,* 205 Iowa 1281; *Shively v. Globe Mfg. Co.,* 205 Iowa 1233; *Federal Nat. Bank v. Koppel,* 253 Mass. 157 (148 N. E. 379). The effect of the discharge of a debtor in bankruptcy is analogous to that of the statute of limitations. *Mallin v. Wenham,* 209 Ill. 252 (70 N. E. 564, 65 L. R. A. 602). There remained, therefore, the moral obligation of appellee to pay the debt, but the legal remedy to enforce was taken away. The contract of assignment is fair on its face, and provides only for the payment of the indebtedness out of the share of appellee in his father's estate, if and when the same becomes vested. The assignment, however, transferred an equitable right or interest ultimately enforcible in that forum: that is, when the possibility of an inheritance became a reality. The whole purpose of the assignment was to secure the indebtedness, the validity of which is not questioned. The interest created was in the nature of a trust. In the absence of the discharge in bankruptcy, the right to the income from the 90-acre tract which passed to appellee under the will of his father immediately upon the father's death vested in and was held by appellee in trust for the benefit of the holder of the notes. It is true that no such interest in the property itself had vested, either in appellee as trustee, or in the bank as assignee, at the time of the bankruptcy proceedings, which could have been the subject of adjudication by the bankruptcy court. The only American case cited in the briefs of counsel, or that has come to our attention, in which the exact question here involved was presented and decided, is *Bridge v. Kedon,* 163 Cal. 493 (126 Pac. 149). A question perhaps somewhat analogous has, however, arisen in some of the intermediate Federal courts, and in a few state jurisdictions. *Mallin v. Wenham,* supra; *Thornton v. Louch,* 297 Ill. 204 (130 N. E. 467); *Citizens Loan Assn. v. Boston & Maine Railroad,* 196 Mass. 528 (82 N. E. 696); *Johnson v. Donohue,* 113 Tenn. 446 (83 S. W. 360; *Walker v. Rich,* 79 Cal. App. 139 (249 Pac. 56). The

question has apparently not yet reached the Supreme Court of the United States. The reasoning of the court in *Bridge v. Kedon,* supra, is so clear and forceful that I prefer to set out a liberal quotation therefrom rather than to restate the doctrine therein announced:

"When we look to the reasoning by which the rule is upheld, it is obvious that a discharge in bankruptcy does not invalidate the charge or lien which equity imposes upon the property. Mr. Pomeroy, in explaining the general doctrine on the subject, and referring to assignments of expectancies, as well as other interests, says: 'The assignee of an expectancy, possibility, or contingency acquired at once a present equitable right over the future proceeds of the expectancy, possibility, or contingency, which was of such a certain and fixed nature that it was sure to ripen into an ordinary equitable property right over those proceeds as soon as they came into existence, by a transformation of the possibility or contingency into an interest in possession. There was an equitable ownership of property in abeyance, so to speak, which finally changed into an absolute property, upon the happening of the future event.' (3 Pomeroy's Equity Jurisprudence, Sec. 1271.) And with regard to bankruptcy, in Section 1291 he says: 'According to the general doctrine of equity, established beyond any doubt by the highest judicial authority, the equitable assignment or the equitable lien upon the property to be acquired in the future is valid and enforceable, not only against the contracting party himself, but also against subsequent judgment creditors, assignees in bankruptcy, and all other volunteers holding or claiming under him, and against subsequent purchasers from him with notice of the assignment of lien.' As we understand the theory, as stated in Section 1271 aforesaid, it is that, as soon as the assignment is executed, the assignee becomes vested of an equitable right to receive the property ultimately, a right which, by the rules of equity, is sure to become an ordinary vested property right when the event occurs by which the possibility is realized as a certainty. He does not mean to say that the possibility by which the estate becomes an estate of the heir in possession is sure to happen, but that, if it does happen, the equitable right is then sure to ripen into an ordinary property right. The language has

been criticized in some cases, which attribute to this passage the contrary meaning: that it was the possibility which was sure to ripen into an ordinary property right in the assignee. (*McCall v. Hampton*, 98 Ky. 166 [56 Am. St. Rep. 335, 33 L. R. A. 266, 32 S. W. 406].) In the case of a loan, according to these principles, there is created by the assignment a present equitable charge on the property, which equity recognizes as vested, although it is neither vested nor valid at law, and which, when the descent is cast, at once ripens into a lien upon the property for the security of the money loaned. This being the nature of the equitable right created by the assignment, it would follow, in analogy to the rule concerning ordinary liens, that the discharge in bankruptcy did not divest Bridge of his then existing equitable right to Kedon's prospective inheritance. The general rule is well established that an assignment invalid at law, but good in equity, is valid in equity against the assignor in bankruptcy, whether the thing is assigned absolutely or only as security for a debt. In the latter case, the discharge in bankruptcy terminates the legal personal obligation to pay the debt, and the right granted or assigned is limited to the enforcement of the payment of the money loaned, with interest, out of the property which is the subject of the grant or assignment. (3 Pomeroy's Equity Jurisprudence, Sec. 1291; 5 Am. & Eng. Encyc. of Law & Prac., p. 963.) The assignment is treated in equity as a present contract to convey the future interest, a contract which creates a trust as soon as the interest becomes absolute; and this is a present existing right by contract, which the discharge in bankruptcy does not avoid or terminate. The continued existence of the debt as a personal obligation to pay money is unnecessary to the enforcement of an equitable charge or lien upon specific property.''

See, in this connection, *In re Lind,* 1 Ch. Div. (1915) 744; *In re Lind,* 2 Ch. Div. (1915) 345.

The possibly analogous cases referred to involved assignments of wages to be earned in the future. It is held in these cases that an assignment of future earnings which may accrue under an existing contract of employment is a fair contract, which creates rights which may be enforced in equity. It was further held in each of the cases that the right or interest of

the assignee of wages to be earned in the future under an existing contract was not affected by a discharge of the debtor in bankruptcy; but, as already indicated, the authorities are not in harmony on this point. As holding to the contrary, see *In re West,* 128 Fed. 205; *In re Lineberry,* 183 Fed. 338; *Progressive Bldg. & L. Co. v. Hall,* 135 C. C. A. 613 (220 Fed. 45); *In re Harrington,* 200 Fed. 1010; *Rate v. American S. & R. Co.,* 56 Mont. 277 (184 Pac. 478); *Blake v. Alswager,* 55 N. D. 776 (215 N. W. 549); *Leitch v. Northern Pac. R. Co.,* 95 Minn. 35 (103 N. W. 704).

In each of the foregoing cases, it was held that the discharge of the debtor in bankruptcy prior to the time the wages were actually earned operated to release and set at naught the respective assignments involved. Discussing the question from the standpoint of wages, the Supreme Judicial Court of Massachusetts, in *Citizens Loan Assn. v. Boston & Maine Railroad,* 196 Mass. 528 (82 N. E. 696), said:

"They proceed upon considerations as to the effect of an assignment of wages and the rights vesting thereunder in the assignee, as well as public policy pointed out in the latter case, which are inconsistent with what we conceive to be sound reasoning, and opposed to the numerous decisions of this court above cited concerning rights acquired under assignments of wages. In the absence of a decision to the same effect by the Supreme Court of the United States, we cannot accede to them as authoritative."

By way of further analogy, it has been held in some jurisdictions that a conveyance of a mere expectancy is as binding upon judgment creditors of the grantor as it is upon himself, if it is made without intent to defraud. *Hale v. Hollon,* 90 Tex. 427 (39 S. W. 287, 36 L. R. A. 75). Also, that a covenant by warranty in an ordinary deed which is co-extensive with the grant operates as an estoppel against the grantor if and when he becomes vested with an interest in the property of the ancestor as an heir at law. *Ayer v. Philadelphia & Boston F. B. Co.,* 159 Mass. 84 (34 N. E. 177). This court has in at least two cases recognized and enforced a lien in favor of a creditor upon the interest of an heir when the same became vested upon the death

of the ancestor. *Klingensmith v. Klingensmith,* 193 Iowa 350; *Richey v. Richey,* supra.

It seems to the writer that the contractual right created by the assignment enforcible in equity, if the possibility upon which it is based becomes a reality, is one that was not in any way affected by the discharge in bankruptcy. It was given as security for the debt, for the enforcement of which, as a debt, the remedy has been taken away. The equitable right conferred partakes of the nature of an assignment of collateral security, independent of the debt itself. The equitable right remains, and is enforcible in equity as a lien upon the interest in the estate when the title thereto has vested. I would reverse.

I am authorized to say that Mr. Justice Kindig joins me in this dissent.