**LILLIAN MILLS, Plaintiff**

v.

**WARREN HENDRICKS, THEOPHILUS LARSEN, EDITH THOMAS, DOROTHY S. BIRCH and LISTON SEWER, Defendants**

Civil No. 154 - 1958

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

June 10, 1959

*See, also, 173 F. Supp. 771*

BIRCH and MADURO, Charlotte Amalie, Virgin Islands (JOHN L. MADURO, ESQ., of counsel) Charlotte Amalie, Virgin Islands, *for petitioner*

ALPHONSO A. CHRISTIAN, ESQ., Charlotte Amalie, Virgin Islands, *for defendants*

GORDON, *Judge*

This is an equitable action for the cancellation of a document executed by the petitioner, Lillian Mills, on May 19, 1958, entitled "Agreement Transferring Property as Heir Apparent"[1] on the grounds of lack of consideration, mis-

---

[1] AGREEMENT TRANSFERRING PROPERTY AS HEIR APPARENT

KNOW ALL MEN BY THESE PRESENTS:

That, for and in consideration of the sum of $1.00 (One Dollar), U. S. Currency, and for other good and valuable considerations, the receipt whereof is hereby acknowledged, I, LILLIAN MILLS, a single woman, of St. Thomas, Virgin Islands, on this 19th day of May, A.D., 1958, at St. Thomas, Virgin Islands, hereby agree to convey, grant and transfer, and by these presents do convey, grant and transfer unto Warren Hendricks, Theophilus Larson, and Edith Thomas, all residents of St. Thomas, Virgin Islands; and to Dorothy Sewer Birch and Liston Sewers, both residents of New York, N. Y., share and share alike, all such property, real and personal and mixed, wherever situated, as I may inherit or come into possession or ownership of as heir at law or testamentary heir from my sister, LUCILLE MILLS SEWER, of St. Thomas, Virgin Islands, now seriously ill and hospitalized at the Knud-Hansen Memorial Hospital.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my Seal this 19th day of May, A.D., 1958, at Charlotte Amalie, St. Thomas, Virgin Islands.

/s/ Lilian Mills    (Seal)
Lillian Mills

Signed, sealed and delivered
in the presence of:
/s/ Alphonso A. Christian
/s/ Barbara T. Christian
/s/ Helen Jarvis

20

take, and fraud present in and surrounding the execution of the document. The real estate involved are three properties in St. Thomas, namely, No. 5 Estate Contant, No. 28 Estate Contant, and No. 28 Vester Gade, having a total value of approximately $15,000.00, belonging to the deceased Lucille Sewer, who died in St. Thomas, intestate, on May 20, 1958, the day after the execution of the document. The petitioner Lillian Mills was and is the only heir of the decedent Lucille Sewer.

The defendants, Warren Hendricks, Theophilus Larsen, Edith Thomas, Dorothy S. Birch and Liston Sewer, are the beneficiaries under the agreement. It appears that Warren Hendricks, Theophilus Larsen and Edith Thomas were reared by the deceased Lucille Sewer, and that Edith Thomas was her second cousin. The defendants deny there was any lack of consideration, mistake and fraud surrounding the execution of the document and contend that it was voluntarily and freely executed and is valid and binding on the petitioner, and they pray that the petition be dismissed with costs and attorney's fees.

The case came on for trial before the Court, without a jury, on December 18, 1958. The circumstances surrounding the execution of the document are, briefly, as follows:

On the 19th day of May, 1958, Lucille Sewer, the deceased, and sister of the petitioner Lillian Mills, was dying at the hospital here and petitioner was at the hospital to see her sister and in sorrow and distress on account of the impending death of her sister Lucille Sewer; that the de-

---

TERRITORY OF THE VIRGIN ISLANDS )
District of St. Thomas                          ) ss: Acknowledgment

BE IT REMEMBERED that on this 19th day of May, A.D., 1958, before me personally appeared LILLIAN MILLS, to me personally known and known to me to be the person who executed the foregoing instrument, and after explaining to her the full import and effect of the said instrument, she did acknowledge that she executed the same freely and voluntarily for the purposes therein stated.

/s/   G. deCastro

NOTARY PUBLIC

fendants Hendricks, Larsen and Thomas approached Lillian Mills at the hospital as to whether she would be willing to sign a document giving them whatever property the deceased would leave for her upon her death, as it was known by petitioner Lillian Mills and the defendants that Lillian Mills was the only heir of her sister. It further appeared that the petitioner agreed to give them "something" and stated she wanted to leave "something" also for her granddaughter when she (petitioner) dies. It appears that the defendants had already engaged their lawyer, Attorney Alphonso A. Christian, to draft the necessary document and that Attorney Christian had it prepared for the petitioner's signature; it also appears that a notary public was alerted to notarize the signature of the petitioner; that the petitioner was taken in a car by the defendants to their lawyer's office direct from the bedside of her sister at the hospital and was ushered into their lawyer's office without the benefit or advice of an attorney or friend; that the petitioner is a very frail and forgetful woman, 69 years of age, with limited education and poor eyesight, and unfamiliar with legal and business practices. It appears that there is a conflict in the testimony as to what transpired before and at the time of the signing of the document before the notary public — the petitioner's version is that Attorney Christian asked her two questions and she answered indicating that her sister had reared the boys, meaning the defendants in the case, and she was willing to give them "something." The testimony of the petitioner as to what transpired follows:

"He said to me if my sister rear those boys. I told him yes. He turned again, would I agree to give them something. I said to him yes, because They all been around working. Your Honor, I don't know. I signed the paper, but I signed the paper according to two questions he asked me. He did read a paper, sir, because I was in grief, because I don't understand what he was reading. I don't know if he put anything different — the two questions he asked

22

me. That's the mistake, sir. Understand me, because he asked me the two questions. He's reading the paper and I can't tell you anything what's on it because I was in grief of my poor sister, and I signed it. The only two questions he asked me. I didn't tell him to transfer anything to those boys.

"The Court: All right, the second one.

"A. He said if I would be fair enough to give them something of what she leave. I said to him yes, because they been around working, sir, not another word. I never tell the Judge to transfer, give them nothing, absolutely.

"Mr. Maduro: Did he explain to you what was in this paper?

"A. He read the paper. He did read it, but he didn't tell me what the meaning was in the paper. He didn't explain what was in the contents of the paper. I don't know what was in the contents. He read the paper. He did.

"Q. But you told him you were willing to give them something?

"A. That's what I said. The two questions he asked me, and I answered the two questions, and your Honor, the two questions he asked I answered the two questions, because I never had no dealings with the law. I knows nothing about those things.

"Q. Did you intend to transfer your entire interest?

"A. No, your Honor, I couldn't do such a thing.

"Q. Now, Miss Mills, when did you find out that you had transferred the entire interest?

"A. Well, a month after my sister died, the tenants at my sister's house told me when I went to them to ask about the rent said them to me that Warren said Judge Christian said to collect his rent and I must have no interest in whatever my sister have. And I wanted to know what it was."

The defendants' version is that the document was read to the petitioner and it was prepared to transfer all the deceased['s] interest in the property to them in view of the conversation they had with the petitioner; that petitioner signed it voluntarily and that she was not upset or under great stress at the time.

Gerardo deCastro, the notary public who notarized the document, testified upon inquiry of Attorney Christian as follows:

"Q. Will you proceed and tell the Court what procedure you followed in fixing, notarizing the document?

"A. Well, after you read the document to the lady and you asked her to sign it and I told her if she understood what you read and she said 'yes' she did and it was about her sister's property. She then signed. I notarized it. You called your daughter and another lady was outside to sign as witnesses."[a]

The question for decision of the Court is whether in equity and good conscience the document should stand or be cancelled and the petitioner afforded equitable relief. It must be observed that the document purports to transfer *all property* of an heir apparent which she (petitioner) "may inherit or come into possession or ownership of as heir at law or testamentary heir from my sister, Lucille Mills Sewer, of St. Thomas, Virgin Islands, now seriously ill and hospitalized at the Knud-Hansen Memorial Hospital."

As to the enforceability of contracts or grants by prospective heirs, Pomeroy's Equity Jurisprudence, Section 953, states as follows:

"Expectant heirs, reversioners, and holders of other expectant interests stand in a position different from that of all other persons sui juris, and a special jurisdiction for their protection has long been well established. This jurisdiction rests upon two distinct foundations. In the first place, heirs, reversioners, and other expectants, during the lifetime of their ancestors and life tenants, are considered as peculiarly liable to imposition, and exposed to the temptation and danger of sacrificing their future interests, in order to meet their present wants. Being sometimes in actual, but more often in imaginary, distress, they do not stand upon an equal footing with those who deal with them concerning their expectant estates, and such persons are in a position to take advantage of their condition, and to dictate inequitable and even extravagantly hard terms in any contract of loan or purchase which may be made. In the second place, the dealings of heirs and reversioners with their expectant interests are often a gross violation of the moral if not legal duties which they owe to their ancestors and life tenants who are the present owners of the property, and from or

through whom their future estates will come, and may be a virtual fraud upon the rights of those parties. Equity, therefore, treats such dealings with expectant interests as a possible fraud upon the heirs and reversioners who are immediate parties to the transaction, and as a virtual fraud upon their ancestors, life tenants, and other present owners. Upon these two considerations the equitable jurisdiction is founded.

"S 953a. — Relief in Equity; Presumptions. — The rule is well settled that all conveyances, sales, and charges, and contracts of sale or charge, of their future and expectant interests made by heirs, reversioners, and other expectants during the lifetime of their ancestors or life tenants, upon an inadequate consideration, will be relieved against in equity, and either wholly or partially set aside. In this instance, fraud is inferred from mere inadequacy of consideration."

The same authority, Pomeroy's Equity Jurisprudence, section 870 on "cancellation" states:

"The most important affirmative remedies conferred by an exercise of the equitable jurisdiction on the occasion of mistake are cancellation and reformation. Cancellation is appropriate when there is an apparently valid written agreement or transaction embodied in writing, while in fact, by reason of a mistake of both or one of the parties, either no agreement at all has really been made, since the minds of both parties have failed to meet upon the same matters, or else the agreement or transaction is different, with respect to its subject-matter or terms, from that which was intended."

The same authority, section 927 with regard to "inadequacy of consideration" states as follows:

"Although the actual cases in which a contract or conveyance has been canceled on account of gross inadequacy merely, without other inequitable incidents, are very few, yet the doctrine is settled, by a consensus of decisions and dicta that even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract, whether executed or executory. Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief."

25

In the case of Gannon v. Graham, 211 Iowa 516, at page 519, 231 N.W. 675, 676, 73 A.L.R. 1050, the late Justice Morling, speaking for the court, said:

"An assignment of such an expectancy, though it will be carefully scrutinized and is not favored, yet if it is made in good faith for an adequate consideration and without fraud, and if it is not otherwise unconscionable or invalid, will be sustained and enforced in equity . . ."

In Burke v. Morain, 112 A.L.R., page 83, the court said with regard to enforcement in equity of assignment of expectancies as follows:

"The rule in Iowa is that assignments of expectancies are not favored and will be closely scrutinized. They will, however, be sustained and enforced in equity as a mere executory promise on the part of the assignor to assign what property he does in fact inherit, if they are made in good faith and for an adequate consideration and without fraud, and if not otherwise unconscionable."

It is clear, therefore, if from a fair preponderance of the evidence in the case the Court finds that there was no consideration inuring to the benefit of the petitioner, or that no gift on account of blood relationship was intended; that she signed the document in the mistaken belief that she was transferring "something" or some part of the property to be inherited from her sister, to the defendants, upon the death of her sister; or, that the circumstances surrounding the execution of the document savored of constructive fraud, then the petitioner is entitled to the cancellation of the document. If, on the other hand, the Court cannot so find, then the defendants are entitled to have the petition dismissed.

Upon a review of all the evidence and facts surrounding the execution of the document in question, the Court has no hesitancy in finding that the petitioner was imposed upon and was in no condition to realize, and did not realize, the significance of the document she signed. Everything that was done in this case germinated in the minds of the

defendants and was triggered by them to the point where the petitioner was brought in a car to their lawyer, from the hospital, where she was attending her dying sister. Petitioner had no counsel or friend to advise her and she was not given the chance or requested to seek counsel. Here is a frail woman, sixty-nine years of age, with poor eyesight, ignorant of legal matters, of no means in the world, the only apparent heir of property valued approximately $15,000.00, and under no obligation, legal or moral to be benevolent to the defendants, although she was willing to give them "something". Is it reasonable to believe that such a person would knowingly give away all her property interest to the defendants? She did not receive one dime in consideration of this transfer or gift; that she was under the impression that she had signed a document to give them "something", and not to give her entire interest in the property, was shown by her going to collect rents from the properties *after* the execution of the document; also, the notarization of the document was done in a very perfunctory manner; the notary public did not assure himself that the witness realized what she signed; that the petitioner's age, condition and the nature of the document should have caused the notary public to be cautious and to assure himself that the petitioner understood the legal effects that would flow from the signing of the document; that in further evidence of this, the notary's acknowledgment states that the document was acknowledged after "explaining to her the full import and effect of said instrument", while the same notary public testified that Attorney Christian "read" the document to the petitioner.

Therefore, it is the conclusion of this Court that the document in question should be and it is hereby cancelled; that the defendants acquired no right, title or interest in the real property or personal property in question; and that the estate of Lucille Sewer is entitled to the rentals

27

of the real property in question. Petitioner is entitled to recover of defendants her costs and a reasonable attorney's fee.

A judgment, in accordance with the above, will be signed upon presentation.

