McClure v. Raben.

No. 14,321.

McClure v. Raben.

CONVEYANCE.—*Expectancy.*—*Sale of by Heir.*—*When not Enforceable Against After-Acquired Estate.*—A conveyance by an heir, without covenants of warranty, of his expectant interest in land owned by and in the possession of the parent at the time of the conveyance, will not be enforced against the heir after he inherits the title, unless it be shown that the transaction was perfectly fair, that the purchase-money paid was the full and fair market value of the property at the time of the purchase, and that the ancestor was informed of the conveyance and acquiesced therein.

SAME.—*Pleading.*—*Cross-Complaint.*—*Insufficiency of.*—In an action by the heirs for partition and to quiet title, a cross-complaint by such grantee against his co-defendant, the grantor, which alleges that the sale was made in good faith and for the full value of the expectant estate, but fails to allege the facts showing the amount and value of the estate purchased and the amount of the purchase-money paid, and that such purchase-money was the fair market value of the property at the time of the purchase, and that the conveyance was made known to the ancestor, and that he acquiesced therein, is bad.

From the Posey Circuit Court.

*W. Loudon* and *F. P. Leonard,* for appellant.

*G. V. Menzies,* for appellee.

OLDS, J.—Thomas McClure, Jane W. McClure, John Wilson, and others, filed their petition in the Posey Circuit Court against George Danley, Mary E. Pool, Joseph McClure, the appellant, and Antony Raben, the appellee, and others, praying for the partition of certain lands situate in said Posey county, Indiana, and for the quieting of the title thereto, as against certain parties.

In said proceedings the appellee, Antony Raben, filed his amended cross-complaint against the appellant, Joseph McClure, which cross-complaint is as follows :

" Antony Raben, one of the defendants in the above entitled cause, for amended cross-complaint against his co-defendant, Joseph McClure, says that heretofore, to wit, on the

30th day of March, 1853, Leah McClure, the mother of said Joseph McClure, was a widow, and was the owner in fee simple, and in possession, of all the lands described in the complaint in this action, and in the deed hereinafter mentioned.

" That on the date aforesaid said Leah McClure was a person of unsound mind, incapable of managing her own estate, and that she so continued without a lucid interval until her death, on the 10th day of March, 1886; that she died in said State and county intestate, leaving, as her only heirs at law, the said Joseph McClure, and six other persons, whose names are unknown; that on the date first mentioned, the 30th day of March, 1853, the said Joseph McClure, at that time over twenty-one years of age, as an expectant heir of his mother, the said Leah McClure, by his deed of bargain and sale, a copy of which, marked 'A,' is filed herewith as a part of this amended cross-complaint, sold and assigned to one Samuel D. McReynolds his expectant interest in the lands therein described, as heir at law of said Leah McClure; that the said Joseph McClure received from the said McReynolds the full value of his said expectant interest, and the contract by which the said Joseph McClure sold and assigned his said expectant interest was *bona fide* and without any fraud practised upon the said Leah McClure or the said Joseph McClure; that afterwards, to wit, on the 15th day of June, 1863, the said McReynolds sold and conveyed to said Raben the interest in said lands sold and assigned to him by the said Joseph McClure; that said Joseph McClure claims to be the owner in fee simple of one undivided full seventh part in value of said lands as one of the heirs at law of said Leah McClure, and adversely to the interest of said Raben, thereby casting a cloud upon his, the said Raben's, title to one-seventh part in value of said lands. Wherefore said Raben prays for judgment against Joseph McClure to quiet the title of said Raben to an undivided one-seventh in value of said lands, and inhibiting said Joseph McClure, or

those claiming under him, from setting up any right or title to and into any of said lands as an heir at law of said Leah McClure, adverse to the title of said Raben, and for all proper relief."

"Exhibit A," deed: "This indenture witnesseth that Joseph McClure, of Posey county, Indiana, in consideration of three hundred dollars to him paid by Samuel D. McReynolds, of the same place, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell and convey to the said McReynolds, his heirs and assigns forever, the following real estate in Posey county and State of Indiana, and described as follows, to wit."

Here follows a description of the land, being the same described in the petition : "Or all the estate, right and title that the said McClure may have in and to the same at the death of his mother, the widow of John McClure, deceased, as one of her heirs at law, together with all the privileges and appurtenances to the same belonging, to have and to hold the same to the said Samuel D. McReynolds, his heirs and assigns forever. In testimony whereof the said Joseph McClure has hereunto set his hand and seal this 30th day of March, 1853. JOSEPH McCLURE."

Said deed was duly acknowledged and recorded.

To this amended cross-complaint the appellant filed a general demurrer.

The court overruled the demurrer to said amended cross-complaint, and appellant reserved exceptions, and failing to answer the amended cross-complaint, judgment was pronounced against him in accordance with the prayer of the same.

The only error assigned is the overruling of the appellant's demurrer to the amended cross-complaint of the appellee, Antony Raben.

The question presented is as to whether or not the sale and conveyance by Joseph McClure of his expectant interest in the real estate owned in fee simple by his mother, and of

which she was in possession at the time of the sale, is valid either in law or in equity so as to pass the title thereto to his grantee on Joseph's survival of his mother.

The broad question is presented as to whether a child, during the lifetime of his father or mother, can make a valid sale and transfer of an expectant interest in the real estate at the time owned and in the possession of the parent, as in this case. It is conceded that the deed in this case contains no covenants of warranty by which an after-acquired title would pass to the grantee, but it is contended on behalf of the appellee that the cross-complaint shows the sale to have been made in good faith and for a valuable consideration, and without fraud, and that it is valid in equity, and that the grantee is entitled to have it specifically enforced on the estate vesting in the grantor. In this contention of the appellee we can not concur.

It is a general rule that a sale, in the absence of property, conveys no title. There must be something to sell or else there can be no sale. It is conceded that the rule which applies in case of a deed of general warranty, whereby the heir would be barred from setting up a subsequently acquired title, does not apply, and applying the rule applicable to quitclaim deeds, and treating the conveyance in this case as such, the heir is not estopped from setting up the subsequently acquired title. In the case of *Bryan* v. *Uland*, 101 Ind. 477, it is said by the court that "A quitclaim deed is effectual to pass the estate which the grantor has at the time it is made, and no more; it does not estop him from asserting an after-acquired interest," and this doctrine is so well settled that we need not cite other authorities. But it is contended that the specific interest contracted for by the grantee in this case and intended to be sold by Joseph McClure, the grantor, was his expectant interest, that which he would inherit in case she died intestate and he survived her, and that such a sale, when made in good faith, and in the absence of fraud and for full value, as averred in the cross-

complaint, is valid in equity and may be enforced against the heir after he inherits the title, should he inherit as in this case, and we concede that some authorities can be found in support of such a doctrine, but as we view them they are based upon a very narrow foundation, as it is almost universally held that, even in the absence of fraud, the heir may tender back the consideration paid and rescind the contract, though he be of full age when the sale and contract or deed is made, and that the burden is upon the purchaser to show that the sale was in good faith and that no fraud was practised upon either the heir or the ancestor, and that full value was paid, and an inadequate consideration alone will defeat an enforcement of the contract; on the other hand, there are numerous authorities which hold that such a sale gives no right to any subsequently acquired interest.

The case of *Alves* v. *Schlesinger*, 81 Ky. 290, is a case directly in point. In that case the court says: "By the terms of a written contract, dated in 1878, Samuel J. Alves undertook, for a valuable consideration, to sell and convey to his sister, appellant, Augusta Posey, all the right, title and interest he then had or might thereafter acquire by gift, devise, or descent from his mother, Mrs. Augusta Alves, in the land in controversy, and furthermore, agreed to execute and deliver to Mrs. Posey all necessary and proper deeds to perfect the title to the land whenever it could be done, or his interest in the property might be determined. When the attempted sale and conveyance was made by Samuel J. Alves to appellant, Mrs. Alves was alive, and held the fee simple title to the land, and he then had no right or interest therein, legal or equitable, vested or contingent. In fact what he sold and undertook or agreed to convey, had neither actual nor potential existence. And as the existence of the thing sold, or the subject-matter of the contract, is essential to the validity of a sale, of course the attempted sale to appellant in this instance did not prejudice appellee, who was a creditor, or prevent the levy and sale of the interest of Samuel J.

Alves in the land after the death of Mrs. Alves, when, for the first time, it had an existence."

The identical question involved in this case was decided by the Supreme Court of Ohio in the case of *Hart* v. *Gregg*, 32 Ohio St. 502, and it was held that the conveyance by a son of his expectancy in land owned by his father, which would descend to him if he survived his father, and the latter should die intestate owning the same, is the conveyance of a naked possibility, not coupled with an interest, and passes no estate or interest in the land; that such a conveyance does not operate to defeat the grantor's title afterwards acquired by descent, except by way of legal, or equitable estoppel, and that if such conveyance contains no covenants of warranty or recitals, and there are no acts of the grantor amounting to an equitable estoppel, he is not estopped from asserting an after-acquired title. In that case it is said by the court:

"In the deed before us, as there are no covenants of warranty, nor any recitals of fact that he had any title, or any right to make the conveyance, there is nothing that would estop the grantor, either in law or in equity, from setting up an after-acquired title, where, as in this case, there is no possession under the deed, and no charge of fraud in the transaction." See *Boynton* v. *Hubbard*, 7 Me. 112.

Indeed, many of the authorities, which assert that such conveyances may be upheld and enforced by courts of equity, declare that the *onus* is upon the purchaser to show that the transaction was a *bona fide* one, and based upon a full consideration, and that the ancestor from whom the estate is expected was informed of and acquiesced in the sale, and that inadequacy of consideration alone is sufficient to avoid the contract. Even the enforcement of them, under such circumstances, is regarded of doubtful propriety.

Story, in his work on Equity, 1 Story Eq. Jurisprudence (13th ed.), section 328, says: "Let us now pass to the consideration of the third class of constructive frauds, combin-

ing in some degree the ingredients of the others, but prohibited mainly because they unconscientiously compromit or injuriously affect the private rights, interests, or duties of the parties themselves, or operate substantially as frauds upon the private rights, interests, duties, or intentions of third persons." Again it is said, section 333 : " But the great class of cases in which relief is granted under this third head of constructive fraud is that where the contract or other act is substantially a fraud upon the rights, interests, duties, or intentions of third persons. And here the general rule is, that particular persons in contracts and other acts shall not only transact *bona fide* between themselves, but shall not transact *mala fide* in respect to other persons who stand in such a relation to either as to be affected by the contract or the consequences of it. And as the rest of mankind besides the parties contracting are concerned, the rule is properly said to be governed by public utility. (Section 334.) It is upon this ground that relief has been constantly granted in what are called catching bargains with heirs, reversioners and expectants during the life of their parents or other ancestors. Many and indeed most of these cases (as has been pointedly remarked by Lord Hardwicke) ' have been mixed cases, compounded of almost every species of fraud, there being sometimes proof of actual fraud, which is always decisive. There is always fraud presumed or inferred from the circumstances or conditions of the parties contracting, from weakness on one side and usury on the other, or extortion or advantage taken of that weakness. There has always been an appearance of fraud from the nature of the bargain, even if there be no proof of any circumvention, but merely from intrinsic unconscionableness of the bargain. In most of these cases have concurred deceit and illusion on other persons not privy to the fraudulent agreement. The father, ancestor, or relation from whom was the expectation of the estate has been kept in the dark. The heir or expectant has been kept

from disclosing his circumstances and from resorting to them for advice, which might have tended to his relief and also to reformation. This misleads the ancestor who has been seduced to leave his estate not to his heir or family, but to a set of artful persons who have divided the spoil beforehand.'" See, also, sections 335, 336. It is laid down as a rule that "It will be sufficient to make the purchase unimpeachable, if a fair price or the fair market price be given therefor at the time of the dealing." Section 336.

In treating of this subject Pomeroy, in his work on Equity Jurisprudence, vol. 2, pp. 473 and 474, section 953, says: "Equity, therefore, treats such dealings with expectant interests as a possible fraud upon the heirs and reversioners who are immediate parties to the transaction, and as a virtual fraud upon their ancestors, life-tenants, and other present owners." And it is further said : "But in every such conveyance or contract with an heir, reversioner, or expectant, a presumption of invalidity arises from the transaction itself, and the burden of proof rests upon the purchaser or other party claiming the benefit of the contract, to show affirmatively its perfect fairness, and that a full and adequate consideration was paid—that is, the fair market value of the property, and not necessarily the value as shown by the life-tables." The same rule is applied to this class of cases whether the grantor be an infant or an adult.

From the rule as laid down by Story and Pomeroy, and which we have quoted, it will be seen that such contracts are looked upon with suspicion, and that they are presumed fraudulent and will not be enforced except it be clearly made to appear to be a perfectly fair transaction, and that the actual, full and fair market value was paid for the property, and, indeed, before such a sale will be enforced, we think it also within the rule, and necessary to the enforcement of such a contract, to allege and prove that such contract and sale were made known to the ancestor or person from whom the estate is expected, and he put in full possession of the

facts concerning such transaction, and his consent obtained to such contract, sale or conveyance; that if not made known to him it operates as a fraud upon him. We regard such contracts and conveyances against public policy. The grantor at the time has no property or interest in the property of his father or ancestor which he can sell or convey, and none which the grantee can purchase. It is a mere gambling contract; it is wagering that the son or heir will survive the father or ancestor, and that the latter will not dispose of the property and will die intestate, whereby the grantor will at some time in the future inherit an interest which he can then convey. It operates as a fraud upon the ancestor and divests his bounty from the heir to a stranger. It encourages extravagance, prodigality and vice on behalf of the heir, and in some instances might create an anxiety on the part of an avaricious or vicious purchaser for the death of the ancestor.

We are not prepared to say that some case might not arise in which it would be inequitable not to enforce a contract made with an heir for his future prospective inheritance in the estate of his ancestor, but we do not think the facts alleged in the cross-complaint present a case entitling the cross-complainant to relief. It must, at least, be necessary in such a pleading to allege the facts showing the amount and value of the estate purchased, and the amount of the purchase-money paid, and that such purchase-money was the full and fair market value of the property at the time of the purchase; the cross-complaint is defective in that respect. We think it further necessary to the validity of such conveyance that it was made known to, and that the ancestor acquiesced in such sale and conveyance.

Judgment reversed, at costs of appellee, with instructions to sustain the demurrer to the cross-complaint, and for further proceedings in accordance with this opinion.

Filed Sept. 20, 1890.

## SEPARATE OPINION.

ELLIOTT, J.—I concur in the conclusion that the cross-complaint is bad, but I do not fully assent to some of the propositions stated by the court, nor to all of the reasoning of the opinion. In my judgment an heir apparent may convey an estate in expectancy, but, in order to enforce the conveyance, the purchaser must show good faith, and that he paid the fair value of the property conveyed. It is not enough to show that he paid the value of the estate considered as an estate in expectancy, but he must show that he paid the value of the property without reference to the uncertainty of the estate ever vesting. In other words, he must show that he paid the full value of the property, estimated as if the estate were absolute and fully vested, and without regard to any hazard resulting from the uncertain nature of the expectant estate. It is the value of the property and not the value of the expectant estate which the purchaser must pay. I think, too, that this rule applies where there is a warranty deed, or where the estate conveyed is specifically described, but that it does not apply where there is nothing more than a mere quitclaim deed.

It seems to me that the requirement of the law that the full value of the property shall be paid is a check so full and strong as to prevent fraud, and that an heir who secures the full worth of the property, valued as an absolute and vested estate, can not avoid his conveyance, made when he was an heir presumptive.

Filed Sept. 20, 1890.