GRAEF, Respondent, vs. KANOUSE, Appellant.

*September 18—October 13, 1931.*

598

For the appellant there was a brief by *Frank, Wheeler & Pelkey* of Appleton, and oral argument by *Heber H. Pelkey*.

For the respondent there was a brief by *Benton, Bosser & Tuttrup* of Appleton, attorneys, and *H. F. McAndrews* of Kaukauna of counsel, and oral argument by *Roger R. Tuttrup*.

ROSENBERRY, C. J.   The principal contention of the defendant is that the contract made by the heirs and set out in the plaintiff's complaint is void as against public policy within the rule laid down in the following cases: *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Will of Reynolds,* 151 Wis. 375, 138 N. W. 1019; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 159 N. W. 737; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326.

Before entering upon a consideration of the doctrine of those cases as applied to the facts in this case, we shall call attention to some general propositions.   Whether or not an heir, without the consent of the person through whom he claims, can assign a future interest in the estate of that person, is open to some doubt.   In Michigan (*Stevens v. Stevens,* 181 Mich. 449, 148 N. W. 229), in Indiana (*McClure v. Raben,* 125 Ind. 139, 25 N. E. 179), and in Kentucky (*Flatt v. Flatt,* 189 Ky. 801, 22 S. W. 1067), it has been held that the assignment of such an expectancy is void if made without the ancestor's knowledge or consent.   In Iowa it is held that such an assignment will be sustained and enforced in equity if made in good faith for

an adequate consideration and without fraud, and is not otherwise unconscionable or invalid. *Gannon v. Graham* (Iowa) 231 N. W. 675.

Upon the question of assignability of an expectancy, see note in 56 Am. St. Rep. 343–345 and 347–348, in which will be found references to other notes and cases where the subject is dealt with. We shall not determine whether or not such contracts are valid in general, the question not necessarily being presented by the record in this case. It is quite apparent that such contracts are not favored in the law and are subject to close scrutiny by the courts called upon to enforce them even in jurisdictions where they are held valid. There are, however, essential differences between a contract by the terms of which an expectant heir assigns a possible interest in the estate of his ancestor to another upon a valuable consideration and a contract such as the one set out in the complaint, where there is no consideration except the mutual promises of the parties, the interest of each of the parties being wholly expectant. Under such circumstances there is a large speculative element involved in the transaction. The ancestor might for good reason disinherit all but one of the parties to the contract and leave the remainder of his estate away from the family entirely, in which event the provision made by the ancestor would, under the contract, be divided equally between the expectant heirs. Many other situations might arise rendering the operation of such contracts, however fairly made, burdensome and unfair, principally for the reason that such contracts must of necessity deal with uncertainties. While such contracts may not be, strictly speaking, wagering contracts, they have the highly speculative and some other vicious features of such contracts.

In *Boynton v. Hubbard,* 7 Mass. 112, the court, speaking of a contract in which an heir agreed to assign to the plaintiff one third of his expected estate, which was very much

larger than had been anticipated by the parties to the contract, and the plaintiff was seeking to enforce the contract according to its terms, said:

"Heirs, who ought to be under the reasonable advice and direction of their ancestor, who has no other influence over them than what arises from a fear of his displeasure, from which fear the heirs may be induced to live industriously, virtuously, and prudently, are, with the aid of money speculators, let loose from this salutary control, and may indulge in prodigality, idleness, and vice, and, taking care, by hypocritically preserving appearances, not to alarm their ancestor, may go on trafficking with his expected bounty, making it a fund to supply the wastes of dissipation and extravagance. Certainly, the policy of the law will not sanction a transaction of this kind, from a regard to the moral habits of the citizens. . . .

"But when it is considered that a contract of this kind is a mere wager, in a case where there are no principles by which the value of the chances may be estimated, so as to ascertain whether it be unconscionable or reasonable; and, therefore, if valid in any case, it may be valid in all cases, public policy has additional inducements to discountenance it, as dangerous to good faith and fair dealing."

The court concluded:

"Without pursuing the nature of the contract further, it is most manifest that it must be a desperate wager on one side or the other; and, as such, ought not to be countenanced as the foundation of an action."

In *McClure v. Raben*, 125 Ind. 139, 25 N. E. 179, it was held in regard to a contract of the kind set out in plaintiff's complaint in this case, as follows:

"It is a mere gambling contract. It is wagering that the son or heir will survive the father or ancestor, and that the latter will not dispose of the property and will die intestate, whereby the grantor will at some time in the future inherit an interest which he can then convey. It operates as a fraud upon the ancestor and divests his bounty from the

kin to a stranger. It encourages extravagance, prodigality, and vice on behalf of the heir."

For an exhaustive note on the validity of sale of an expectancy by a prospective heir, see 33 L. R. A. 266 *et seq.;* also 9 Ruling Case Law, p. 133 *et seq.,* Conveyances or Releases of Expectancies.

The principal claim of the defendant is that the contract in question is contrary to public policy for the reasons laid down in *Will of Dardis, supra,* and subsequent cases. In reply to that contention it is urged that in *Estate of Sipchen,* 180 Wis. 504, 193 N. W. 385, it was in effect held that parties interested in an estate have a right, even before final distribution, to make such disposition of their shares, by contract or otherwise, as to them may seem proper, and that a disposition so made may be enforced in the county court or in some other court of competent jurisdiction.

Two propositions are to be derived from *Will of Dardis* and subsequent cases: (1st) That any scheme entered into by the beneficiaries of a will by which the will of the testator is effectually defeated or thwarted, will be considered against public policy; and (2d) That in the probate of a will the principal question to be determined is one of status in which the whole world has an interest, and that it is against public policy to deny or grant a will probate merely upon the stipulation of parties immediately interested, the court having no power to set aside a will upon equitable grounds.

In *Will of Dardis, supra,* the will had not been admitted to probate and the stipulation was to the effect that decedent was mentally incompetent and by the stipulation the beneficiaries disposed of the estate.

In *Will of Rice, supra,* the beneficiaries and those having claims against the estate agreed to have the will admitted to probate provided it should be construed in accordance

with the terms of the stipulation, and the will was accordingly admitted.

In *Will of Reynolds, supra,* the will was admitted to probate, there having been objections to its probate on the grounds of mental incompetency. Upon the making of the stipulation the objections to the probate of the will were withdrawn pursuant to the terms of the stipulation.

In *Estate of Staab, supra,* a fraud was perpetrated upon the county court by procuring the probate of a will of a testator theretofore adjudged incompetent, and it was held that the agreements for the disposition of the estate were void and should be disregarded.

In *Estate of Sipchen, supra,* the situation presented was very different. In that case the will had been duly admitted to probate. There was no claim that the testator was incompetent, other grounds existing upon which the will might have been denied probate. After the will had been admitted to probate, one of the beneficiaries disposed of his share under the will prior to its distribution by the court. There was no effort made to defeat the will of the testator. The interest of the beneficiary was vested, and it was held that under such circumstances he might deal with his vested interest in the estate as he might with any other vested interest.

There is a wide difference existing between contracts dealing with an interest in an estate which is vested in accordance with the terms of the will when each party to the agreement knows exactly what the interest being dealt with is and an agreement made dealing with a mere expectancy or possibility, the character and value of which may not in any way be determined or even estimated.

We are cited to the case of *Spangenberg v. Spangenberg,* 19 Cal. App. 439, 126 Pac. 379, as an authority for holding that contracts of the kind in question are valid. It is mani-

fest that the state of California has a public policy with respect to wills which is quite different from that declared in this state.

In *Stringfellow v. Early,* 15 Tex. Civ. App. 597, 40 S. W. 871, a contract by the terms of which it was agreed by those interested that a will should not be probated was held valid, and in *Phillips v. Phillips,* 8 Watts (Pa.) 197, an agreement that parties in interest might consent to the destruction or suppression of a will was sustained. These cases are cited with approval by the supreme court of California in the *Spangenberg Case.* The doctrine of these cases was expressly disapproved in *Will of Dardis, supra.* There are other states in which contracts to suppress a will are held valid. Under the law of this state such agreements are void as against public policy. The fact that such contracts are approved in California indicates that the position of Wisconsin and California on the question of public policy involved is squarely opposed.

Upon consideration of the public policy of this state as declared both by the legislature and the judicial branch of the government with respect to the sanctity of wills and the right of a testator to have his will executed in accordance with its terms, all of which matters are fully discussed in the cases cited, we are constrained to hold that the contract in question in this case is void as against public policy for the reason that it is designed and intended to defeat the will of the surviving parent. We reach this conclusion the more readily because of the doubtful validity of such contracts as contrary to public policy upon other grounds.

It is no answer to say that under such an arrangement as the one in question the will of the testator is probated and his estate is distributed in accordance with its terms. The mere fact that the contract as in this case takes hold of the estate after it has been assigned does not alter the

fact that the ultimate purpose of the contract in question was to defeat the disposition of their property made by the parents of the parties unless by the terms of the will the parties to the contract took equal shares. The fact that under the circumstances of this particular case no inequity might have resulted does not affect the question of public policy involved; the will of the mother will be rendered nugatory so far as final distribution of her property is concerned if the agreement is upheld.

It is also urged that contracts of this character should be upheld as calculated to prevent litigation. Litigation has not been prevented in this case, and a perusal of the cases found in the books indicates that it has been a fruitful source of litigation although no great number of cases have arisen involving facts parallel with the facts in this case. Apparently it has not often occurred to expectant heirs to enter into such an agreement as that set out in the complaint.

It may well be that in Wisconsin advanced ground has been taken in the matter of the right of a person to dispose of his property upon his death by will and to have that will given effect according to its terms. However, upon reconsideration of all the matters involved, the court is inclined to stand by the position already taken rather than to depart therefrom. Questions of public policy are primarily for the legislature, and if the policy so long declared and adhered to is not in the public interest, the legislature has given no indication of that fact. Upon the other hand, such indications as it has given are in accord with the policy declared by the courts.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to sustain the demurrer.