HOFMEISTER and others, Trustees, Plaintiffs and Respondents, vs. HUNTER, Defendant and Appellant: WERNICK, Garnishee Defendant and Respondent.

*December 7, 1938—January 10, 1939.*

For the appellant there was a brief by *J. Henry Bennett* of Viroqua, and oral argument by *Levi H. Bancroft* of Richland Center.

*M. N. Daffinrud* of Viroqua, for the respondents Bert Hofmeister, Joseph Sterba, and James W. Rosol, trustees of the segregated trust of the Farmers State Bank, and *Harry T. Jordan* of Hillsboro, for the respondent E. V. Wernick, administrator of the estate of Elvah Hunter.

NELSON, J. The trial court held that this controversy was ruled by *Graef v. Kanouse,* 205 Wis. 597, 238 N. W. 377, although it clearly recognized that the facts there considered were not at all like the facts here. In that case, after reviewing the decisions of this court in *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 136 N. W. 956, 137 N. W. 778; *Will of Reynolds,* 151 Wis. 375, 138 N. W. 1019; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 159 N. W. 737; *Estate of Staab,* 166 Wis. 587, 166 N. W. 326, and the public policy of this state with respect to wills, this court was "constrained to hold that the contract in question . . . is void as against public policy for the reason that it is designed and intended to defeat the will of the surviving parent." While considerable discussion was indulged in as to whether an heir, without the consent of him from whom he expects to inherit, can assign a future interest in the estate of that person, and while this court stated that the question was open to some doubt, that question was not decided. This court said (p. 601):

"We shall not determine whether or not such contracts are valid in general, the question not necessarily being presented by the record in this case. It is quite apparent that such contracts are not favored in the law and are subject to close scrutiny by the courts called upon to enforce them even in jurisdictions where they are held valid. There are, however, essential differences between a contract by the terms of which an expectant heir assigns a possible interest in the estate of his ancestor to another upon a valuable consideration and a contract such as the one set out in the complaint, where there is no consideration except the mutual promises of the parties, the interest of each of the parties being wholly expectant.

Under such circumstances there is a large speculative element involved in the transaction. The ancestor might for good reason disinherit all but one of the parties to the contract and leave the remainder of his estate away from the family entirely, in which event the provision made by the ancestor would, under the contract, be divided equally between the expectant heirs. Many other situations might arise rendering the operation of such contracts, however fairly made, burdensome and unfair, principally for the reason that such contracts must of necessity deal with uncertainties. While such contracts may not be, strictly speaking, wagering contracts, they have the highly speculative and some other vicious features of such contracts."

What was there said with respect to such contracts was not necessary to the decision and it was expressly so stated in the opinion.

This is the first time, so far as we have been able to ascertain, that the question now before us has been presented to this court, upon briefs directed to the precise question. In *Estate of Jacobus,* 214 Wis. 143, 146, 252 N. W. 583, this court, without discussing whether the contract there considered, in any manner violated the public policy of this state, gave full force and effect to the obligation of that contract and held that the agreement of Mrs. Jacobus "to transfer to the trustees of the Wisconsin Masonic Home all property, real and personal, I may now be possessed of or entitled to, *and all which may hereafter come to me from any source whatever,"* was valid, and entitled the trustees to property subsequently acquired by Mrs. Jacobus as a legatee under a certain will, although at the time the legacy was payable to her she was without mental capacity to modify or rescind the contract entered into by complying with the by-laws of the Home which provided a way to withdraw therefrom.

Although the courts of this country are not in accord in their holdings as to the validity of assignments or other contracts made by expectant heirs which purport to transfer expectancies or future interests which may come to them upon

the death of an ancestor or other relative, it is well established in a majority of the other jurisdictions that have passed upon the question, that a person expecting to receive property by will, distribution, or descent may make a transfer of his expectancy to a third person which will be valid and enforceable in equity. See Annotation, 17 A. L. R. p. 601, in which are listed numerous cases decided by the courts of California, Connecticut, Illinois, Iowa, Kansas, Maine, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Tennessee, Vermont, Virginia, and Texas. Massachusetts, Indiana, and Kentucky have, on one ground or another, condemned such contracts. *Boynton v. Hubbard,* 7 Mass. 112; *McClure v. Raben,* 125 Ind. 139, 25 N. E. 179; *McCall v. Hampton,* 98 Ky. 166, 32 S. W. 406; *Hall v. Hall,* 153 Ky. 379, 155 S. W. 755. It has been held in several states that such contracts are void and not enforceable in equity if made without the knowledge and consent of the ancestor. See Annotation, 17 A. L. R. p. 606.

After having given careful consideration to our prior holdings with respect to the public policy applicable to wills, and to the numerous cases from other jurisdictions, we have concluded that such contracts should not be held to be invalid, but should be held to be enforceable in equity, if they are supported by adequate and fair considerations, are free from vitiating elements, if the surrounding facts and circumstances show no imposition on a necessitous heir, and if the heir is *sui juris,*—in other words, such a contract should be enforced in equity if its enforcement would not be inequitable. In the present action, the consideration was adequate and the assignment given to secure a valid unsecured note. There was no overreaching, no taking advantage of a necessitous heir, nothing suggesting that the assignment rested in unfairness, or that its enforcement would be inequitable. Oscar Hunter and his wife, at the time of executing the in-

strument, were *sui juris* and voluntarily made and executed the assignment. There is, in our opinion, no fact which should be held to stand in the way of the enforcement of the assignment according to its terms.

It is contended by the respondents that the following provision of the assignment:

"The parties agree that the foregoing assignment shall be considered a valid, binding, complete and conclusive assignment *in præsenti,"*—

renders the assignment void because Oscar Hunter, at that time, had no interest in the estate of his mother which could be then transferred. At common law, a present transfer of an expectancy by descent or division is a nullity since no one can be an heir to the living, and an heir expectant has no interest in the ancestor's estate during the lifetime of the ancestor. See numerous cases cited in Annotation, 17 A. L. R. p. 597 *et seq.* The assignment, however, provided that "in addition to the foregoing, if demanded by the said assignee, the assignors agree to make a future assignment" as follows:

"And in consideration of said sum so paid as aforesaid, we, the said Oscar Hunter and Josie Jansky Hunter, his wife, agree that upon the death of Elvah Hunter we will mortgage, assign, and convey all the interest the said Oscar Hunter may then inherit in the estate of Elvah Hunter, deceased, as security for said $1,000, and upon her death we agree to make a new assignment, if required and that this contract may then be enforced by an action for specific performance if the said Oscar Hunter and wife shall fail to make such additional assignment if then demanded and refused."

It is clear from the assignment what the parties intended by the assignment. They not only intended to assign their future interest but further agreed, upon the death of Elvah Hunter to mortgage, assign, and convey all the interest that Oscar Hunter might inherit, as security for the indebtedness

owing, and upon the death of Elvah Hunter to make a new assignment if required. In our opinion, the contract is amply broad, when properly construed, to constitute an agreement to convey or assign Oscar Hunter's future interest in his mother's estate.

Was the assignment and agreement to assign or convey all of the future interest which Oscar Hunter might inherit to Wencil Jansky absolute or given as security? The assignment provides:

"Whereas, said Oscar Hunter is indebted to one Wencil Jansky in the sum of $1,000 and is desirous of *securing* said Wencil Jansky against loss to the extent of said sum of $1,000, the same to be paid *or secured* by such share of the property of said Elvah Hunter as said Oscar Hunter may inherit upon her death."

The assignment further provides:

"Now therefore, in consideration of said sum . . . we . . . hereby sell, assign, transfer and set over to said Wencil Jansky all of the share . . . to secure the said sum of $1,000."

The assignment further provides: That the assignors agree to make a future assignment in which "we will mortgage, assign, and convey all the interest . . . *as security* for said $1,000." The warranty deed which was given by the Hunters to Jansky subsequent to the death of Elvah Hunter recited that it was "in pursuance to the contract and assignment made." It is our conclusion that the assignment and deed, construed together, should not be considered as an absolute assignment but rather as an assignment of so much of the expectant interest in the estate of Elvah Hunter as would pay the $1,000 indebtedness and the interest that might accrue thereon.

In the partition action which involved the interest of Oscar Hunter in the real estate inherited by him from his mother,

*Nale v. Hunter, post,* p. 91, 283 N. W. 335, it appears that the real estate was found by the court to be incapable of division and was therefore ordered sold so that the proceeds might be divided, and that, after the payment of the expenses of the partition proceedings, the interests of Oscar Hunter and Josie Hunter, his wife, amounted to $594.57. If these two sums exceed the principal and interest due Wencil Jansky, any balance remaining should be paid over to the trustees of the segregated trust.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion.